We will proceed to the next case, Santashbekov v. Lynch. Ms. Bennett. Good morning, Your Honors. My name is Jennifer Bennett. I'm here on behalf of the petitioner appellant Daniiar Santashbekov. I'm going to refer to the petitioner as Daniiar this morning since it's a shorter name for ease of our conversation. I'm also covering this case for Mr. Richard Trace, who's under the weather right now, so I've come up to speed very quickly and I'll do my best for you this morning. Mr. Daniiar entered the United States on June 29, 2012. He filed an affirmative asylum application with the Asylum Office, which was then referred to the Immigration Court via a notice to appear issued on April 24, 2013. This case has happened very quickly. Mr. Daniiar requested an expedited hearing before the immigration judge. The immigration judge's decision denying his application for asylum was issued in November of 2013, and the board's decision dismissing the appeal was issued in May of 2015. Mr. Daniiar is from Kyrgyzstan, and he's a young 25-year-old male native and citizen of Kyrgyzstan. He's currently married and expecting a child by his wife, who is here in the United States with him. Mr. Daniiar entered the U.S. on a J-1 visa as a cultural exchange student and overstayed. Again, he quickly filed an affirmative asylum application within his one year of entry into the U.S. Your Honors, this is a case where we look at it and we just wonder, what more does the judge or the board actually expect? The judge's findings and the board's findings were erroneous. They were overly burdensome and tedious. In this case, there were no lies. There was no fabrication of documentation. This is the kind of a case where you don't necessarily look to see what is wrong, to nitpick with what is wrong with the evidence. In this case, he testified. Mr. Daniiar testified. He testified extensively. He testified in great detail about the persecution that he suffered. The judge and the board had issue with the fact that he, during his testimony at the hearing, at his individual hearing before Immigration Judge Venacore here in Chicago, that he referred to a speech which spurred and spawned a lot of the persecution that he suffered. That speech was not mentioned in his asylum application. Obviously, a lot more is going to come out in the matter of a three or four hour individual hearing or trial than what is listed, as we all know, as a very small section of an application. He listed the persecution on the application. He testified credibly. Although an adverse credibility finding was reached, there's no explanation in the judge or the board's decisions that explain why it wasn't credible. The only issue is that it was not in the application. Again, that doesn't make it not credible. There was no reference to a direct lie. In addition, he provided corroborating evidence. Again, the judge and the board seemed to not be satisfied with that, but there was no proof or indication that the documentation was fabricated. It just wasn't to the specification or the satisfaction of the judge or the board. But again, as we know, it's very difficult in asylum cases to obtain these sorts of evidence. A lot of asylum applicants, in fact, have no evidence other than their own testimony. In this case, Danny R. had not... That's correct. It's an energy company that's state controlled, yes. That is true, Your Honor. ...leaving everything behind and can't get access to evidence. Well, Your Honor, it was difficult for him to obtain evidence, and he did the best that he could obtaining that evidence. To speak to your question about is the party, the Atamecan Party, is in fact the ruling party, and I actually read extensively myself online yesterday. If you just do a quick Google search, you can quickly determine that there's still strong tension, and although the party is in power, there's a lot of fighting and opposition still occurring. So I don't think that just because his party is now in power that he would be safe. Regardless of that, he has provided his testimony, and he has provided documentary evidence detailing his story of his fear of persecution that we would maintain, Your Honors, that there's simply just no lie, no fabrication of documents. Obviously, it was just more developed during the hearing than it was in his initial asylum application, but that does not render an applicant to be deemed not to be credible. And I see that my time is up, so I will rest unless there's questions until rebuttal. Thank you. Thank you, Your Honors. Mr. O'Connell. Good morning, Your Honors. Joseph O'Connell on behalf of the Attorney General. Your Honors, in this credibility case, there are several inconsistencies and omissions between the petitioner's written statement and his testimony, and the agency reasonably relied on these inconsistencies and omissions in finding him not credible. Now, Petitioner's counsel said that there are no inconsistencies and no lies, but that's not the case. So, on the one hand, we have the petitioner's written statement or his written asylum application, and so he says he joined this Adamican party in October 2009. Six months later, the revolution occurred, and that he was forcibly and unofficially interrogated during the revolution and the fall of chaos. Now, compare that to his testimony, where he says that the revolution occurred in April 2010, and then he joined the Adamican party six months later in October 2010. And, by the way, nothing happened to him during the revolution or the fall of chaos. So that's the first inconsistency, the most notable inconsistency relied on by the agency in this case. Now, second, the agency noted that there was a notable omission from his written asylum application. So, in his testimony, he claimed that he gave this political speech at his university in Bishkek in December 2011, and that this was sort of the proximate cause or this was the motivating factor for all the following alleged incidents that occurred after that, all the alleged interactions with the police and parties and whatnot. But he failed to include that allegation in his written statement or in his written asylum application. And so, again, this is a post-real idea case, and the agency can rely on, number one, inconsistencies, and it can also rely on omissions from his written statements. And so these are the first two big inconsistencies and omissions that the agency relied on. Looking at this form, it looks like there's room for about ten lines of text. That's correct. In the box. That's correct. So how fair is it to, in essence, focus on something omitted from that? Okay. Well, there's two things. So, again, this is sort of the proximate cause for all of his following alleged incidents of abuse. So you would think that he would include this political speech. This is the one political act that he performed, and you would think that he would include this allegation. So, again, the board noted that this is the event that sort of spawned all the other results of his political activities. And, secondly, that's not the only thing that the agency relied on. Again, in that written application, he says he joined that party in October 2009, and he also said, again, that he was forcibly and unofficially interrogated due to the April 2010 revolution and resulting chaos. And that's totally different from what he said during his merits hearing to the immigration judge. So, again, it's not just the omission. It's the inconsistency. It's the omission. And there are other problems with his testimony that the agency noted as well. Again, there's the discrepancy with the name change. He grew up with the name Soltan Hojayev, and the immigration judge asked him, he said, December 2011. He said he changed it to escape the country. And the immigration judge noted that some of the documents he submitted used his new name before the actual certificate of name change. So that was just another discrepancy that the agency relied on. I mean, again, there was the inconsistency, the omission. There was also the sort of vague and implausible testimony regarding the individual identified as Kermanoff. And, again, the petitioner noted that this Kermanoff individual asked him three times to write a statement against his party, and the immigration judge found it implausible that he would travel five or six hours away to his parents' home in Karakol. And it was just an implausible allegation. So, again, we have all these inconsistencies and omissions. And, again, this is a post-re-IDX case. In terms of credibility findings, the IJ pointed out that petitioner's parents and a sibling remained, quote, well and intact in Kyrgyzstan as evidence. His application said that his brother's leg had been broken by people who were trying to come after him and retaliate against the petitioner for what he had been doing and wanted to locate him. And I gather there's some, it looks like some of the medical records at least corroborate for his brother a broken leg. Yeah, there were some medical documents in the record, but the immigration judge gave them less evidentiary weight. Because while the petitioner claimed that he got these documents, he requested them from his brother, the immigration judge also noted that his brother didn't even submit an affidavit on his own behalf. So, I mean, there is some corroboration, but, again, the IJ gave it less evidentiary weight because we have no chain of custody, we have no evidence indicating how he received it, or we don't even have a statement from his brother who allegedly had his leg broken. We don't even have a letter on his behalf from his brother. And, again, the petitioner testified, again, as Your Honor noted, that his parents are employees of a state-owned energy company in Kyrgyzstan now. So, and as far as the corroborating evidence, the petitioner waived any challenge to the agency's conclusion that the corroborating evidence independently established his eligibility for asylum or withholding removal. Again, Your Honor, just to summarize, we have two different narratives, we have two different stories, and under the post-reality act case, and because there's inconsistencies and omissions, the government contends that the petitioner's free view should be denied. So unless there's any questions that you'd like me to address. Thank you, Your Honor. Okay. Ms. Bennett. Thank you, Your Honors. I just have one quick point on rebuttal. So as counsel for the government has stated, in describing a piece of the testimony regarding the fact that the opposing party member would travel five to six hours in order to visit him seemed, quote, implausible. That's exactly and precisely our issue with this case, is that the only explanation that we've been, Mr. Dania has been given by the immigration judge or the board, is that it's implausible. But no real explanation as to why. And I think this court, and Siddiqui versus a number of other cases, has repetitively held that the petitioner is entitled to full, rational explanations as to why the testimony or the evidence did not actually go to the heart of the claim. And an explanation as to why it is not being held credible or being held deemed implausible. And with that, Your Honors, we would just ask that this case be remanded such that the evidence can properly be reviewed for a proper credibility determination. Thank you, Ms. Bennett. Thank you, Your Honors. Thanks again to you, Mr. O'Connell. The case is taken under advisement and the court will stand in recess.